IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| NICOLE TYNES | * | |
| Plaintiff, | * | |
| v. | * | |
| | * | Case No. 1:23-cv-319 |
| | * | |
| MAYOR AND CITY COUNCIL OF OF BALTIMORE | * | |
| | * | |
| Defendants, | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT

Nicole Tynes, by and through her attorneys, Alexus N. Viegas and the Quinn Law Group, alleges and states as follows:

## PRELIMINARY STATEMENT

1. The Plaintiff, Ms. Nicole Tynes ("Ms. Tynes"), began working as a Paramedic on or around August 20, 2014 with the Baltimore City Fire Department (the "Department").

2. In 2016, 2018, 2020, and 2021, Plaintiff filed Charges of Discrimination against the Department and various officers, employees, and agents thereof, for discrimination based on race, disability, color, sex, harassment, terms and conditions of employment, retaliation, and unlawful discharge based on discrimination and retaliation.

3. On October 10, 2020, Plaintiff disclosed to Defendant her medical health-related issues requiring an extensive absence from work. From January 12, 2021 to July 29, 2021, Plaintiff was on medical leave. She was subsequently released to full-duty, without restrictions, by her physician on July 29, 2021. Immediately upon release, the Department

began to document non-descript health issues, performance concerns, and other false documentation, never allowing Plaintiff to return to full duty, and then discharged Plaintiff allegedly because she was regarded as having a disability.

4. On November 7, 2022, the EEOC issued a Notice of Right to Sue.

5. Plaintiff now brings this action to recover the damages she suffered as a result of the Department's violations of the ADA and Title VII.

## JURISDICTION

6. This Court has jurisdiction over this action pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. §12101, *et. seq.* and 28 U.S.C. § 1331, because this is a civil action arising under Title VII and ADA.

## VENUE

7. Venue is proper in this Court under 42 U.S.C. § 2000e-5(f)(3), because the Department committed the unlawful employment practice in Maryland in this judicial district.

## PARTIES

8. Plaintiff resides in Baltimore City, Maryland. Plaintiff is a citizen of Maryland.

9. Plaintiff is a former employee of the Baltimore City Fire Department, as defined by Title VII, and Md. Code, Lab. & Empl. § 11-301(b).

10. Defendant Mayor and City Council of Baltimore (the "MCCB") is the proper party to suits against City Departments and is an employer as defined by Title VII and ADA. MCCB is a city within the meaning of 42 U.S.C. § 5302(a)(5), a person within the meaning of 42 U.S.C. § 2000e(a), and an employer within the meaning of 42 U.S.C. § 2000e(b).

11. Upon information and belief, the Department has more than 501 employees.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

12. Plaintiff exhausted her administrative remedies by timely filing a charge of discrimination with the EEOC in June 2022.

13. On November 7, 2022, Plaintiff received a Notice of Right to Sue dated November 7, 2022.

**FACTS**

*Background*

14. Plaintiff began working as a paramedic for the Department on August 20, 2014.

15. Plaintiff filed an EEOC Complaint for race discrimination and retaliation against her supervisors, including Battalion Chief Theresa Harp, on April 22, 2016. In that Charge, Plaintiff alleged bullying, harassment, threats, discipline, and hostile work environment.

16. On July 25, 2016, Plaintiff was transferred to another Medic unit for unknown reasons.

17. From March 3, 2017 through April 30, 2018, Plaintiff's work location was transferred to the Fire Marshal's office as a result of an on the job injury. From 2016 to April 30, 2018, Plaintiff was not under the supervision of the parties complained against in her 2016 complaint, was not subject to discipline or performance complaints.

18. Upon her return to regular duty in May 2018, Plaintiff was informed she was being "set up" by the parties that were subject to the 2016 Complaint. The parties subject to the 2016 complaint again resumed a level of supervision and control over the Plaintiff.

19. On May 21, 2018, Plaintiff filed an internal complaint alleging hostile work environment and discrimination in terms and conditions. Plaintiff specifically complained about Lara Woolfson ("Ms. Woolfson") for yelling at a supervisor, harassment, and discrimination against Plaintiff and patients.

20. On May 21, 2018, Battalion Chief Harp filed a complaint against the Plaintiff falsely accusing the Plaintiff of making false statements against Harp in the 2016 EEOC charge.

21. From May 2018 to July 2018, Plaintiff was subjected to various acts of discrimination, harassment and retaliation. Plaintiff filed a complaint for same with the Baltimore Commission on Civil Rights ("BCCR") on July 6, 2018.

22. From July 6, 2018 to January 23, 2019, Plaintiff was investigated based on the Complaint by Battalion Chief Harp.

23. On February 26, 2019, Plaintiff was subject to discipline based on Battalion Chief Harp's false accusation and retaliatory complaint.

24. Between March 2019 and February 2020, Plaintiff grieved the adverse action and entered into an agreement to remove the adverse actions and suspension from her personnel file.

25. On October 29, 2020, Plaintiff amended the July 6, 2018, charge of retaliation with the EEOC to include the subjective selection of less qualified candidates for the Position of Fire Inspector I, because of retaliation.

26. On October 10, 2020, Plaintiff disclosed to Defendant her medical health-related issues requiring an extensive absence from work. From January 12, 2021 to July 29, 2021, Plaintiff was on medical leave.

27. On July 29, 2021, Plaintiff's physician cleared her to return to work full-duty and without any restrictions.

28. On August 2, 2021, Plaintiff attended an appointment scheduled by the Department with the Department contracted provider "PSI" to process her return to work. However, PSI physician Peter Lee ("Dr. Lee") ordered Plaintiff to a functional capacity evaluation ("FCE").

29. On August 16, 2021, the FCE was completed and Plaintiff was again cleared to return to full duty.

30. On August 31, 2021, four (4) weeks after her physician cleared her and two (2) weeks after the FCE cleared her, Plaintiff was allowed to return to full duty.

31. From August 2, 2021 to August 31, 2021, the Defendant discriminatorily regarded Plaintiff as an individual with a physical impairment that substantially limits her ability to perform one or more major life functions.

32. On September 1, 2021, Plaintiff was informed that she would need to first complete a Return to Duty Evaluation (the "Evaluation") and testing. Plaintiff was not allowed time to study or prepare for the test, failed the first time, and was not allowed to retake the exam.

33. On September 1, 2021, after failing the exam, Plaintiff was ordered to PSI for evaluation under threat of insubordination. Upon the order for evaluation to PSI, PSI inexplicably placed Plaintiff "off duty" for a "NLOD" medical issue.

34. Plaintiff was inexplicably kept off duty until her next appointment with PSI on September 18, 2021. Plaintiff was informed that she would return to work after she had her appointment.

35. On September 2, 2021, the Department sent Plaintiff an "expiration of medical leave" letter via email, indicating a permanent disability status and a termination date of September 8, 2021.

36. Plaintiff subsequently sought to clarify that she was not disabled from the functions of her job, provided her medical documentation to PSI and the Department, but remained off work due to an unknown disability as supposedly determined by the Department. Plaintiff also attempted to move her appointment with PSI but was not allowed.

37. On September 3, 2021, Plaintiff filed a Special Report requesting the use of accrued leave for Catastrophic Leave, as allowed by Department Policy (Article 31(c) of the Baltimore Fire Firefighter Local 734 Memorandum of Understanding), to extend her termination date due to the previously scheduled PSI appointment, scheduled by Ms. Gercke to be on September 18, 2021. The Catastrophic Leave was approved.

38. On September 8, 2021, the Department terminated Plaintiff's employment despite having approved catastrophic leave through September 18, 2021.

## COUNT I

### Disability Discrimination – Termination of Employment

### ADA (42 U.S.C. §12101 et seq.)

39. Plaintiff repeats and realleges paragraphs 1 through 38 hereof, as if fully set forth herein.

40. Plaintiff was disabled or regarded as being disabled as defined by the ADA and applicable regulations.

41. At all times, Plaintiff was capable of performing the essential functions of her position with or without a reasonable accommodation.

42. Defendant terminated Plaintiff's employment because Plaintiff was disabled or regarded as being disabled.

43. Defendant discriminated against Plaintiff in applying and enforcing its medical termination policy on the basis of Plaintiff's disability or perceived disability.

44. Defendant's discriminatory application and enforcement of its leave policy in violation of the ADA provided a pretextual reason for Defendant to terminated Plaintiff's employment in violation of the ADA.

45. From August 2, 2021 to September 7, 2021, the Defendant treated Plaintiff as if she had a physical health disability and subjected her to discriminatory harassment, in the form of aggressive and combative actions, ignored her medical documentation, demanded physical tests, and kept out of work until clearance by the Defendant's contracted provider PSI.

46. Defendant discriminated against Plaintiff when it terminated her employment the same day Plaintiff spoke HR before Plaintiff had any reasonable opportunity to file a request for reasonable accommodations, in a "timely manner."

47. Defendant discriminated against Plaintiff when it made a determination that she was unable to perform the essential job functions, without or without reasonable accommodations, on September 1, 2021, one day after Plaintiff was cleared to return to duty.

48. Defendant terminated Plaintiff on September 8, 2021, without giving Plaintiff any opportunity to seek medical confirmation of a disability (alleged by Departmnet) or to gather any evidence of this disability, much less appropriately seek reasonable accommodations.

49. Defendant discriminated against Plaintiff when it cancelled her approved catastrophic leave and placed her on "Administrative Leave," an adverse employment decision, to go through an interactive process of determining reasonable accommodations for the disability.

50. Defendants acted intentionally, recklessly, and/or with malice.

51. Plaintiff is entitled to all compensation and remedies allowed under the law and the ADA as a result of Defendant's discriminatory termination of plaintiff's employment.

## COUNT II

### Disability Discrimination – Unlawful Medical Examination

### ADA (42 U.S.C. §12112(d)(4)(A))

52. Plaintiff repeats and realleges paragraphs 1 through 51 hereof, as if fully set forth herein.

53. Plaintiff was disabled or regarded as disabled as defined by the ADA and applicable regulations.

54. In order to harass, embarrass, or otherwise discriminate against Plaintiff on the basis of her disability or perceived disability, Defendant conducted unlawful medical examinations of Plaintiff in violation of 42 U.S.C. § 12112(d)(4)(A).

55. Specifically, Defendant unlawfully demanded that Plaintiff complete a functional capacity evaluation ("FCE") after her physician returned her to full duty. At the FCE, the Defendant's FCE physician inappropriately touched and requested to see Plaintiff's surgical scars from a hysterectomy, stating refusal to comply would result in Plaintiff being considered non-compliant.

56. Additionally, PSI ordered and directed Plaintiff to seek mental health treatment and provide treatment information to PSI.

57. Defendant's purpose in demanding the mental health treatment was not the result of any medical diagnosis or treated condition, and management of such served only to embarrass, harass, and discriminate against Plaintiff.

58. Plaintiff is entitled to all compensation and remedies allowed under the law and the ADA as a result of Defendant's discrimination against Plaintiff.

## COUNT III

## Race/Color/Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §§ 2000e et al.)

59. Plaintiff repeats and realleges paragraphs 1 through 59 hereof, as if fully set forth herein.

60. Plaintiff is a black, African American, Female and qualified for her position when Defendant fired her.

61. Department marginalized Plaintiff while treating similarly situated employees more favorably.

62. Plaintiff was investigated and disciplined for allegedly speaking poorly of a superior, but Ms. Woolfson (white) was subject of complaints by patients and EMS personnel, yelled at superiors, and discriminated against patients but was not reprimanded, written-up or otherwsie subjected to adverse employment actions.

63. While Plaintiff was not allowed to study or retake her protocol test on September 1, 2021, a male co-worker returning from medical leave was allowed to study for and retake his protocol exam.

64. While Plaintiff's employment was terminated due to expiration of medical leave, and despite approved catastrophic leave, a similarly situated male coworker was allowed to stay on catastrophic leave and remain employed until his appointment scheduled after the termination of his leave.

65. Plaintiff suffered damages as a result of Defendant's unlawful discriminatory actions and is entitled to all compensation and remedies allowed under the law.

## COUNT IV

## Retaliation in Violation of Title VII of the Civil Rights Act of 1964

### (42 U.S.C. §§ 2000e et al.)

66. Plaintiff repeats and realleges paragraphs 1 through 65 hereof, as if fully set forth herein.

67. Plaintiff engaged in protected activities throughout 2016, 2018, 2020, and 2021.

68. Defendant knew Plaintiff was engaging in protected activities at all times relevant.

69. Defendant subjected Plaintiff to disparate treatment, unequal terms and conditions, reprimand, and reprisal.

70. Defendant's adverse actions were based on retaliation for Plaintiff's prior engagement in protected activities.

71. Similarly situated employees who had not engaged in protected activities were treated more favorably.

72. Plaintiff suffered damages as a result of Defendant's unlawful retaliatory actions and is entitled to all compensation and remedies allowed under the law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests judgment as follows:

A. Grant judgment in favor of Plaintiff;

B. Award Plaintiff for her past and future loss of wages and benefits, plus interest;

C. Award Plaintiff front pay, including benefits;

D. Award to Plaintiff all costs and reasonable attorneys' fees incurred in connection with this action;

E. Award to Plaintiff compensatory damages;

F.  Award to Plaintiff punitive damages; and

G.  Grant Plaintiff such additional or alternative relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: 2/5/2023                                         Respectfully Submitted,

/s/ Alexus N. Viegas
Alexus N. Viegas, Fed. Bar No. 30506
846 Ritchie Highway, Suite 2A
Severna Park, Maryland 21146
(443) 247-5444
alexus@thequinnlawgroup.com
*Attorney for the Plaintiff*

## **CERTIFICATE OF SERVICE**

      I certify that, on this 5th day of February 2023, the foregoing was served by CM/ECF on all registered C.M.F. users and sent via Certified Mail to:

Mayor and City Council of Baltimore
C/o Baltimore City Law Department
100 N. Holliday Street, Room 101
Baltimore, MD 21202

                                                /s/ Alexus N. Viegas
                                                Alexus N. Viegas